CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

3/08/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
     DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NAYNA TAYLOR,<br><br>      *Defendant.* | CASE NO. 3:16-cr-50008<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  At the end of her sentencing hearing, this Court indicated that it would issue an order of forfeiture of $80,000 against Defendant Nayna Taylor ("Defendant"). After further review of the evidence put forward by the parties and before entering judgment, the Court amends that oral order pursuant to Federal Rule of Criminal Procedure 35(a) and will order forfeiture of $75,200. This Memorandum Opinion further explains the basis for the Court's order.

  "Forfeiture pursuant to § 853(a)(1) is limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt v. United States*, 137 S. Ct. 1626, 1635 (2017). Accordingly, Defendant can only be required to forfeit the money she acquired through her participation in the overarching conspiracy; she cannot be required to forfeit money earned by a co-conspirator. Here, the Court calculates the money Defendant acquired through her crime by multiplying the packets she purchased for resale by the retail price she received per packet. However, the Court will exclude those packets that were seized by law enforcement before Defendant had a chance to resell the drugs.

  First, the parties dispute the quantity of drugs purchased and resold by Nayna Taylor. Defendant argues that she sold no more than 1,000 packets of the drugs. (Dkt. 544). She arrives at this number by relying on several email exchanges and portions of Robert Schroeder's

testimony. (*Id.*). Alternatively, the Government relies on these same exchanges, the rest of Schroeder's testimony, and two seizures of drugs from the Taylors. (Dkt. 666). After doing so, it arrives at a total of 4,060 packets. (*Id.*).

The Court arrives at a final number of 3,760 packets. This is based on the 210 packets accounted for in the emails and the 3,550 packets that Robert Schroeder testified that he sold to Nayna Taylor. (Dkt. 574 at 48, 53-56, 94). The Court does not include the packets seized by law enforcement.

The parties do not contest the packets accounted for in the emails, and so the Court will focus on those accounted for in Schroeder's testimony. Schroeder's testimony can be subdivided into the 3,250 packets sold from 2011 to 2012 and the 300 more packets sold in 2015. In the 2011 to 2012 window, Schroeder testified that his first two in-person sales to Defendant were for 500 packets and 1,000 packets respectively. (*Id.* at 52-56). Schroeder also testified about selling another 1,500 to 2,000 packets to Defendant. (*Id.* at 48 ("More than 1,000. It could be 1,500 or 2,000 [packets].")). The Court takes the midpoint of Schroeder's estimates of these later sales and finds Defendant purchased 1,750 packets. The Court also finds this sale of 1,750 packets was separate from the first two sales. This is because Schroeder testified that Scholz and Purintun were in the United States during the first two sales, (*id.* at 52-56 (describing being in Atlanta with Dave Scholz and Nick Purintun)), but that the 1,750 packets were part of a six kilogram shipment sent to Atlanta while Scholz and Purintun were in China. (*Id.* at 44-47).

Schroeder also testified that Defendant bought 500 more packets in 2015. (Dkt. 574 at 94). But 200 of those packets were seized by law enforcement, and so the Court finds Defendant did not acquire any money through the sale of those 200 packets. Likewise, the Court will exclude the 300 additional packets included in the Government's calculation because these

2

packets were also seized from Defendant, and so Defendant did not "acquire[] [any money] as a result of [these packets]." *Honeycutt*, 137 S. Ct. at 1635. When considered alongside the undisputed packets described in the parties' emails, this leads the Court to its final calculation of 3,760 packets.

Second, the parties also dispute how much money Defendant made per packet. Some of this dispute is based on a lack of clarity about whether certain prices related to half gram or whole gram packets of the drugs. Defendant argued that she should only be accountable for the $10 per packet that she *paid* for the drugs, but this estimate does not tell the Court how much she *received* per packet. (Dkt. 544). Defendant alternatively argued that the Court should use a retail price of $17 per packet, although she acknowledged other evidence the drugs were being sold for $40 per packet. (*Id.*). The $40 per packet price comes from the testimony of Brian Lister who stated that packets were retailing for $20 to $40 per pack. (Dkt. 533 at 48). Neither Defendant or Lister specify whether these prices were with respect to half gram or whole gram prices, although Lister did state that he usually sold half gram packets. (*Id.* at 45). The Government relies on Lister's testimony to argue for a price of $40 per gram, or $20 per half gram packet. (Dkt. 666). Because Lister's testimony was the clearest and most convincing evidence of retail pricing, the Court finds that Defendant was selling the drugs for $20 per packet. The Court will further assume, conservatively, each of the packets was a half gram packet.

Defendant separately argues that she should only be required to forfeit a rough estimation of her profits, or the difference between this retail price and the price she paid for the drugs. (Dkt. 544). However, "proceeds," as used in Section 853, means gross receipts, not net profits. *See United States v. McHan*, 101 F.3d 1027, 1041-42 (4th Cir. 1996) (defining Section 853's

3

reference to "proceeds" as gross proceeds, not profits), *abrogated on other grounds by Honeycutt*, 137 S. Ct. at 1635; *see also United States v. Carey*, 268 F. Supp. 3d 29, 32 (D.D.C. 2017) ("The majority of circuit courts to consider whether 'proceeds' in § 853 means net profits or gross receipts have reached the same conclusion."). Courts have largely agreed that this remains true even after the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008), which construed the same word in a different context. *See, e.g., United States v. Bucci*, 582 F.3d 108, 123 (1st Cir. 2009) ("*Santos* is not controlling here. The forfeiture statute at issue in *Santos*, 18 U.S.C. § 1956(a), is distinguishable from the statute at issue here, 21 U.S.C. § 853, in at least two critical respects."); *United States v. Peters*, 732 F.3d 93, 101 (2d Cir. 2013) (citing *McHan* after considering the effect of *Santos*).

Accordingly, the Court finds that the Defendant is responsible for 3,760 packets at a price of $20 per packet. These leads to a total forfeiture amount of $75,200.[1] A judgment reflecting this forfeiture will issue, and the Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion to the Government, Defendant, and all counsel of record.

Entered this __8th__ day of March, 2018.

                                                                                                      NORMAN K. MOON
                                                                                                      SENIOR UNITED STATES DISTRICT JUDGE

---

[1] Additionally, in her initial brief on forfeiture, Defendant argued forfeiture was inappropriate because the jury was not instructed to determine the forfeitability of *specific property*. (Dkt. 544). But as other courts have found, the provision relied on by Defendant does not apply to the forfeiture of *money*. *See United States v. Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) ("[T]his subsection does not apply to the monetary forfeiture."); *United States v. Jameel*, No. 2:13CR98, 2014 WL 5317860, at *3 (E.D. Va. Oct. 16, 2014) ("[T]he Defendant has no right to have a jury determine forfeiture since the Government is not seeking specific property forfeiture."), *aff'd*, 626 F. App'x 415 (4th Cir. 2015).